AO 91 (Rev. 11/11) Criminal Complaint  AUSA: Ryan A. Particka  Telephone: (313) 226-9635
Special Agent: Joseph D. Kajer  Telephone: (502) 974-7849

# UNITED STATES DISTRICT COURT
for the
### Eastern District of Michigan

United States of America
v.

Clayton Hiroshi Mitsui, Jr.

Case No.
Case: 2:22-mj-30062
Assigned To : Unassigned
Assign. Date : 2/9/2022
Description: CMP USA v. SEALED MATTER (SO)

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of  July 1, 2017-Nov. 30, 2019  in the county of  Oakland  in the
 Eastern  District of  Michigan , the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C § 641 | Theft of Public Funds, |

This criminal complaint is based on these facts:

☑ Continued on the attached sheet.

_____
Complainant's signature

Joseph D. Kajer- Special Agent
*Printed name and title*

Sworn to before me and signed in my presence
and/or by reliable electronic means.

Date: February 9, 2022

_____
Judge's signature

City and state: Detroit, MI

Jonathan J.C Grey- U.S Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF
## CRIMINAL COMPLAINT AND ARREST WARRANT

I, Special Agent Joseph D. Kajer, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. Based on my training and experience and the facts set forth in this affidavit, there is probable cause to believe that Clayton Hiroshi Mitsui, Junior (Mitsui) committed the offense of Theft of Public Funds, in violation of Title 18, United States Code, Section 641. Mitsui was removed from active duty in the Hawaii Army National Guard (HIARNG) on July 1, 2017. However, Mitsui continued to receive active duty pay until November 30, 2019, which resulted in an overpayment of approximately $205,435.38.

2. I am a Special Agent with the U.S. Army Criminal Investigation Division (USACID), and have been employed in that position since December 9, 2019. I am a Federal Law Enforcement Officer having received training in Military and Civilian Law Enforcement Techniques. I am designated by law as a Federal Law Enforcement Officer authorized to receive and serve federal civilian warrants and military search authorizations. I received training in general crimes at the Criminal Investigation Division Special Agent Course (CIDSAC), Fort Leonard Wood, Missouri. As a Special Agent of the USACID, I am empowered to

investigate violations of the United States Code of Military Justice (UCMJ) and applicable Federal and State laws where there is an Army interest. During my tenure as a Special Agent, I have conducted and participated in numerous investigations of criminal activity, including, but not limited to, the investigation of illegal controlled substances, larceny, fraud, crimes against persons, and child pornography violations. During the investigation of these cases, I have executed, or participated in the execution of, numerous search authorizations and search warrants, and seized evidence of these violations.

3. This affidavit is being submitted for the limited purpose of making a criminal complaint and showing that there is sufficient probable cause for the requested warrant. I have not included every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that the elements have been met to show that Mitsui violated 18 U.S.C. § 641 (Theft of Public Funds).

## JURISDICTION

4. As discussed more thoroughly below, this investigation involves the violation of 18 U.S.C. § 641 (Theft of Public Funds). The funds were the property of the United States Government, being fraudulently obtained from the Defense Finance and Accounting Service (DFAS), acting on behalf of the United States Army. The Army Criminal Investigation Division investigates all matters

involving felony level crimes with a United States Army nexus. Mitsui began committing the offense when he was released from active federal service and returned to his address of record in O'ahu, Hawaii. He continued the offense after he relocated to Troy, Michigan.

## BACKGROUND CONCERNING U.S. ARMY PAY

5. The Defense Finance and Accounting Service (DFAS) pays all Department of Defense (DoD) military and civilian personnel, retirees, and annuitants, as well as major DoD contractors and vendors. DFAS also supports customers outside the DoD in support of electronic government initiatives. Customers include the Executive Office of the President, the Department of Energy, the Department of Veterans Affairs, the Department of Health and Human Services, and the U.S. Agency for Global Media.

6. The Active Component Pay System within DFAS includes only Active Duty service members under Title 10 U.S. Code. When mobilized (or activated) under Title 10 U.S.C., individuals are directed by the President to report for Active Duty in an official capacity. The Reserve Component Pay system within DFAS includes all National Guard and Reserve service members not on Title 10 Orders.

7. The term "Active Guard Reserve" (AGR) means an Active Duty service member *assigned* to an Army Reserve unit. They are part of a Title 32

(Reserve) unit but they on Title 10 (Active) Status. This means they are considered Active Duty service members, receiving Active Duty pay, while assigned to a reserve unit. Their tasks mainly deal with administrative work for the reserve unit.

8. The term "drill pay" means pay and entitlements earned when training on weekends and during full-time training events while employed by the Army National Guard. Drill pay is provided through a Reserve Component Pay System, which is different than the Active Component Pay System.

9. The term "Military Orders" with respect to a service member, means official military orders (including orders for separation or retirement), or any notification, certification, or verification from the service member's commanding officer, with respect to the service member's current or future military duty status.

10. The term "Branch manager", with respect to the Army job position, means the individual who oversees where a particular Soldier is assigned based on the Army Manning Guidance.

11. The term "Adjutant General", with respect to the Army job position, means the chief administrative Officer.

12. The term "digitally signed" means the document has been signed in accordance with the DoD Policy for Digital Signature Functionality and Acceptance. The Common Access Card and biometric signature are the only authorized method of digital signature for the DoD. The Common Access Card

uses a digital signature in conjunction with a personal pin code. The digital signature has the same legal effect and consequence as a handwritten signature within the DoD.

## PROBABLE CAUSE

13. In or around June 2019, Mitsui, currently a member of the Michigan Army National Guard (MIARNG), inquired as to why he was not receiving his MIARNG Reserve Component pay. A subsequent investigation revealed that Mitsui improperly received active duty pay and allowances for over two years after his separation from active duty, while serving in the HIARNG and the MIARNG.

14. According to military records, Mitsui enlisted in the HIARNG on or around November 27, 1984. In November 2016, Mitsui completed a memorandum through which he requested to be removed from full-time Active Guard Reserve (AGR) status with an effective date of July 1, 2017. Mitsui digitally signed the memorandum on November 17, 2016, and it was subsequently submitted to and signed by Mitsui's chain of command.

15. On February 6, 2017, Major General (MG) Kenneth S. Hara, current Adjutant General, HIARNG, Honolulu, HI, acting for the then-current Adjutant General (the approving authority for the action), signed a memorandum approving Mitsui's release from Active Guard Reserve status with an effective date of July 1, 2017. The approval memorandum directed Mitsui to contact a Human Resource

Officer for the HIARNG Active Guard Reserve Branch to coordinate separation processing. The memorandum was distributed to the Adjutant General's subordinate commanders to execute the order. As discussed below, Mitsui admittedly did not complete the required separation processing.

16. Mitsui subsequently received Military Orders that separated him from active duty (Title 10) status. Mitsui was then to be transitioned into the HIARNG (Title 32) status. Specifically, Military Orders, Order Number 121-001, were issued on May 1, 2017, which stated Mitsui was released from active duty and into a HIARNG status with an effective date of June 30, 2017. A Certificate of Release or Discharge from Active Duty form was then completed on July 7, 2017, which documents that Mitsui's active service ended on June 30, 2017. This document was provided to Mitsui.

17. On February 12, 2019, Military Orders were issued transferring Mitsui from the HIARNG into the MIARNG with an effective date of February 9, 2019.

18. In June 2019, Mitsui submitted a pay inquiry to determine why he was not receiving his drill pay from the MIARNG. Coordination with the MIARNG revealed that Mitsui was not receiving drill pay because he was receiving active duty pay and entitlements. Lieutenant Colonel (LTC) Jeffery Austhof, Commander, 1-182nd Field Artillery Battalion, MIARNG, Detroit, MI stated that

Mitsui identified as an Active Guard Reserve (AGR) member. However, LTC Austhof stated that Mitsui did not function in that role and was not entitled to Active Guard Reserve pay and entitlements. Chief Warrant Officer 5 (CW5) Joseph H. Bruinsma, AGR Branch Manager, MIARNG, Lansing, MI confirmed that Mitsui was not an Active Guard Reserve member.

19. LTC Austhof reported the information up the chain of command to Colonel (COL) John Wojcik, General Counsel, MIARNG, Lansing, MI, who subsequently reported the violation to the USACID. COL Wojcik also reported that the U.S Property and Fiscal Office-Michigan confirmed with DFAS that Mitsui's fraudulently-obtained active duty pay and MIARNG reserve pay were both deposited into Mitsui's personal checking account.

20. Curtis Brunsting, Financial Systems Analyst, Military Pay Operations, DFAS-Indianapolis, subsequently conducted a review of Mitsui's military pay and entitlements. Brunsting confirmed that Mitsui received active duty pay and entitlements until November 2019. Brunsting stated that the payments stopped when the MIARNG filed the proper paperwork to terminate the pay. Brunsting further stated that the records showed that Mitsui transferred to the Army National Guard on July 1, 2017 and received multiple Reserve Component payments.

21. Military Records were reviewed and it was determined that Mitsui was not entitled to active duty pay and entitlements after June 30, 2017. He was

entitled to <u>only</u> drill pay while serving as a Hawaii National Guard Soldier and continued to be entitled to <u>only</u> drill pay while serving as a Michigan National Guard Soldier.

22. On April 16, 2020, I conducted a telephonic, non-custodial interview with Mitsui. Mitsui was advised at the beginning of the interview that he did not have to speak with me and that he could end the interview at any time. Mitsui admitted that he received military pay and entitlements to which he was not entitled. Mitsui also admitted to spending the money on child support, bills, and credit card debt. He stated that he did not tell anyone that he was receiving Active Duty pay and entitlements when he was in the HIARNG. Mitsui stated, "I knew I was doing something wrong." He stated that he submitted a pay inquiry in June 2019 when he stopped receiving drill pay when he was assigned to the MIARNG. He stated that he did not tell anyone that he was receiving Active Duty pay and entitlements when he was in the HIARNG; likewise, he stated that he never told anyone that he received Active Duty pay when he was in the MIARNG. He admitted that he took no actions to attempt to stop the Active Duty pay and entitlements and said, "I got caught when I came to Michigan." He further said, "If I could turn back time and change it, I would." Mitsui stated that he was notified by DFAS of his debt.

23. Special Agent Cody Decker, DFAS Liaison Officer, USACID, provided a copy of the DFAS Debt Notification, which documents the finalized loss to the government as $205,435.38.

## CONCLUSION

24. Based on my knowledge, training and experience, and the facts set forth in this affidavit, I respectfully submit that there is probable cause to believe that Clayton H. Mitsui, Jr. committed the offense of Theft of Public Funds, in violation of Title 18, United States Code, Section 641.

Respectfully submitted,

*[signature]*

Joseph D. Kajer
Special Agent
United States Army Criminal
Investigation Division (USACID)

Sworn to before me and signed in my presence and/or by reliable electronic means.

*[signature]*

Jonathan J.C. Grey
United States Magistrate Judge
February 9, 2022